FILED

01 AUG 29 PM 3: 28

U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNTIED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

HARRYL COTTRELL and )
LORENZO D. TAYLOR, )
)
Plaintiffs, )
)
v. )   CIVIL ACTION NO.  CV-01-JEO-0759-S
)
CHEMICAL LIME COMPANY OF )
ALABAMA, INC., )
)
Defendant. )

**ENTERED**

**AUG 2 9 2001**

## MEMORANDUM OPINION

This matter is before the court on the defendant's motion to stay the present proceedings

and to compel arbitration.  (Doc. 9).

On November 9, 1999, the parties to the present action, as well as other individuals,

executed a settlement agreement in other then outstanding matters.  The agreement provides that

it was intended to resolve the then pending litigation.[1]  As a part of the settlement, the plaintiffs

herein received monetary compensation.  The defendant agreed to undertake numerous actions

including, (1) affirming a zero tolerance of harassment and retaliation policy; (2) publication of

---

[1] Specifically, it provides:

> This Agreement resolves the EEOC complaint, the complaint styled David Thomas v. Chemical Lime Company, Inc., CV-98-BU-2945-S (N.D. Ala.), and EEOC charge nos. 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; 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;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; 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; 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; 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; 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; 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; and 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. Upon execution of this Agreement, said complaints will be dismissed with prejudice by stipulation of the parties and the referenced EEOC charges closed.
>
> . . . .
>
> The duration of this Agreement shall be two (2) years from the date of entry of the Agreement. Accordingly, this Agreement shall expire and shall be without force and effect two (2) years from the date of entry of this Agreement.

(Doc. 9, Ex  A-1).

18

its policy statement on harassment; (3) stating that it would not retaliate against any person who filed discrimination charges or a lawsuit or who participated in such matters; (4) taking affirmative actions to promote and recruit African-Americans; (5) providing training for its managers and other employees; and, (6) properly announcing management positions and reporting the same to the EEOC.  It also explicitly agreed not to (1) discriminate against or harass or intimidate any employee on the basis of race in violation of Title VII; (2) create, facilitate, or permit the existence of a racially hostile environment; or, (3) retaliate against any current or former employee premised on his or her opposition to any practice of racial harassment or race discrimination.  Lastly, the agreement included an arbitration dispute resolution procedure.[2]

---

[2] The agreement provides:

G. Dispute Resolution Procedure

       The parties shall select an arbitrator by mutual agreement or by alternate strikes from an American Arbitration Association panel of metro-Birmingham arbitrators who shall have the authority to resolve all disputes arising under the Agreement subject to the various limitations of enforcement set forth in this Agreement.  If a dispute arises, counsel for Claimants, the EEOC or Chemical Lime shall notify all counsel of record.  Counsel then agrees to meet and confer as necessary on differences in the application of this Agreement about which notice is given and use their best efforts to resolve any difference or disputes regarding the interpretation or implementation of this Agreement, including compliance with the training, education, management position announcement or complaint process as set out herein.  Counsel shall have the right to move the Arbitrator to resolve any dispute regarding compliance with any provision of this Agreement after the following conditions have been met:

       1.  If any party has good reason to believe that a legitimate dispute exists under this Agreement which cannot be resolved by consent agreement, the initiating party shall give prompt written notice to the other party, including a reference to the specific provisions of the Agreement, a statement of the issues, a statement of the remedial action sought by the initiating party and a brief statement of the facts, circumstances and other arguments supporting the position of the initiating party;

       2.  The non-initiating party will have twenty (20) days within which to respond in writing to the statement of facts and arguments set forth in the notice and shall provide its written position including the facts and arguments which support its position to the initiating party;

       3.  The parties shall then undertake through negotiations and through the exchange of relevant documents to attempt to resolve the area of dispute or alleged non-compliance;

       4.  If good faith efforts to resolve the matter fail, written notice of impasse to the non-initiating party or parties will be given and any party may file a motion with the Arbitrator, with supporting briefs, requesting resolution of the dispute on the issue of non-compliance, provided that such motion shall be limited to disputes and issues specifically raised pursuant to this provision, and that the "meet-and-confer" provisions of this section have been complied with.  The non-moving party will have fifteen (15) days to

2

As a part of the settlement, the plaintiffs herein were required to sign releases of their

EEOC claims.  The releases, which are identical but for the names, provide:

> For and in consideration of the payment of TWENTY FOUR
> THOUSAND THREE HUNDRED SEVENTY FIVE DOLLARS AND NO
> CENTS ($24,375.00), the receipt and sufficiency of which is hereby
> acknowledged, the undersigned [plaintiff], for himself, his successors, heirs and
> assigns, hereby forever releases Chemical Lime Company of Alabama, Inc., its
> officers, directors, employees, agents, corporate affiliates, parent company and
> successors (herein individually and collectively referred to as Chemical Lime)
> from any and all claims, causes of action, contracts or liabilities whatsoever, in
> law or in equity, arising under Title VII of the Civil Rights Act of 1964 ("Title
> VII"), as amended, the Civil Rights Act of 1866 ("Section 1981"), as amended,
> the Americans With Disabilities Act, and any other federal or state law or
> regulation relating to employment discrimination, including without limitation any
> claims that were or could have been the subject of EEOC Charge of
> Discrimination No. 130992762. [Plaintiff] specifically acknowledges and
> covenants that he has knowingly relinquished and forever released any and all
> claims and remedies which might otherwise be available to him against Chemical
> Lime under any of said employment discrimination laws, including claims for
> back pay, promotion, front pay, compensatory damages, punitive damages,
> recovery of interest, costs and attorneys' fees.
>
> [PLAINTIFF] EXPRESSLY STATES AND AGREES THAT HE HAS
> CAREFULLY READ THIS RELEASE OF CLAIMS AND ACKNOWLEDGES
> THAT HE IS RELEASING CHEMICAL LIME FROM ANY POSSIBLE CLAIM
> WHICH HE MAY HAVE AGAINST CHEMICAL LIME OR ANY OF THE
> PARTIES DESCRIBED ABOVE ON ACCOUNT OF ANY CLAIM RELATING
> TO EMPLOYMENT DISCRIMINATION. [PLAINTIFF] FURTHER AGREES
> THAT HE IS REPRESENTED BY AN ATTORNEY OF HIS CHOOSING AND
> HAS OBTAINED ADVICE OF COUNSEL BEFORE DECIDING WHETHER
> TO EXECUTE THIS RELEASE OF CLAIMS.

(Doc. 9, Ex. A-4 & 5).

On March 1, 2001, plaintiffs Cottrell and Taylor filed the present litigation, alleging civil

---

respond to any such notice and reply pleadings will only be allowed by consent of the opposing party or by
order of the Arbitrator.

     5.  The Arbitrator shall attempt to resolve any dispute raised under the preceding paragraph with or
without a hearing and the decision of the Arbitrator on this issue will be final and binding.

(Doc. 9, Ex. A-1, pp. 9-10).

rights violations under 42 U.S.C. §§ 1981 and 2000e, *et seq.*, as amended by the Civil Rights Act

of 1991.  Cottrell alleges that the defendant has discriminated against him premised on his race

and in retaliation for his participation in the above-mentioned matters.  Specifically, he alleges

that the defendant did not properly post his utility position, subjected him to a racially hostile

environment, and required him to perform additional work for individuals who did not complete

their work.  (Doc. 1, ¶ 8).  He also alleges that he was singled out for discipline for purported

attendance violations while white employees were not disciplined for similar or more serious

violations.  (*Id.*, ¶ 9).  Taylor alleges that he was subjected to a racially hostile work environment

and that he was passed over for promotions that were given to less senior white employees.  (*Id.*,

¶ 11).  He further alleges that he was disciplined for conduct that white employees were not.

(*Id.*).

On May 1, 2001, the defendant moved to stay the present proceedings and to compel

arbitration of the plaintiffs' claims pursuant to the settlement agreement referenced above and the

Federal Arbitration Act ("FAA").  (Doc. 9).  The plaintiffs filed a reply claiming that the

settlement agreement is *void ab initio* because it does not provide any remedies for the plaintiffs.

(Doc. 11, pp. 3-6).  The plaintiffs rely on *Paladino v. Avnet Computer Tech., Inc.*, 134 F.3d 1054

(11th Cir. 1998) and *Wright v. Circuit City Stores, Inc.*, 82 F. Supp. 2d 1279 (N.D. Ala. 2000).

The defendant retorts that *Paladino* and *Wright* are distinguishable since the arbitration clauses in

those cases were "unenforceable because they improperly limited the relief available to a plaintiff

compelled to arbitrate federal statutory employment claims, thereby defeating Title VII and

Section 1981's remedial and determent functions."  (Doc. 12, p. 1).

The plaintiffs next filed a supplemental response wherein they contend that in view of the

4

recent decision of the Eleventh Circuit in *Perez v. Globe Airport Security Services, Inc.*, 253 F.3d 1280 (11th Cir. 2001), finding a ". . . provision of [an] arbitration agreement stating that costs of arbitration would be shared equally between employee and employer was illegal and unenforceable in light of [the] fact that [the] agreement also required [the] employee to submit her Title VII claims to arbitration," the present motion is due to be denied. (Doc. 13). They also assert that "[t]he costs associated with this arbitration agreement would effectively preclude the plaintiffs from proceeding." (*Id.*). In support of this last claim, the plaintiffs have submitted affidavits. The defendant contends that the plaintiffs have waived their "fee-splitting/economic hardship" arguments because they are untimely. They further assert that they are due to be denied on the merits. (Doc. 15). Arguments were heard on the motion on July 2, 2001. At the hearing, the court agreed to consider only the plaintiffs' first argument, concerning whether the agreements were *void ab initio*, and the question of whether they were untimely in presenting the additional claims.

## I. THE FAA

The FAA establishes a "federal policy favoring arbitration" *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983). It provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon some grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA effectively admonishes the federal courts to "vigorously enforce agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985). Questions of arbitrability must be addressed with regard to the federal policy favoring arbitration, and "any doubts concerning the scope of arbitrable issues should be resolved

in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a defense to arbitrability." *Moses H. Cone Memorial Hospital*, 460 U.S. at 24-25. The broad breath and scope of the FAA was recently affirmed by the United States Supreme Court's decision in *Circuit City Stores, Inc. v. Adams*, ___ U.S. ___, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001), where the Court held that only employment contracts of transportation workers were exempted from FAA.

Although the FAA does not create independent federal question jurisdiction, *id.* at 25 n. 32, it does create a body of federal substantive law which establishes and regulates the duty to honor an agreement to arbitrate. The FAA explicitly requires that the arbitration provision be written, and that it evidence a "transaction involving commerce." 9 U.S.C. § 2. Section 3 of the Act provides for a stay of federal proceedings when an issue in the matter is referable to arbitration. 9 U.S.C. § 3. Section 4 provides the court with the authority to issue orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement. 9 U.S.C. § 4. Further, state law that conflicts with the FAA is preempted under the Federal Constitution's supremacy clause. U.S. Const. Art. VI, cl. 2; *Perry v. Thomas*, 482 U.S. 483, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987).

## II. DISCUSSION

### A. *Void ab Initio*

In the present case, there is no dispute that the arbitration provisions are in writing and that they evidence a "transaction involving commerce." 9 U.S.C. § 2. Instead, the plaintiffs' initial argument is that the arbitration provisions are *void ab initio* because of the lack of available remedies. In support of this position, they assert that the express language of the

releases precludes them from pursing any claims and remedies otherwise available under the discrimination laws. (Doc. 11, pp. 2-4).

The settlement agreement cited above unequivocally did a number of things: (1) it settled the outstanding lawsuit and pending EEOC charges; (2) it provided the plaintiffs with monetary relief; (3) it required the defendant to pursue a course of events intended to improve race relations with its employees; (4) it prohibited any retaliatory conduct as a result of the pending matters; and (5) it provided a dispute resolution procedure through the use of arbitration. It also required the plaintiffs herein to execute a "Release of Claims."

A common sense reading of the release mandates the conclusion that the plaintiffs were releasing past claims related to their pending EEOC charges. Such an interpretation, as noted by the defendant's counsel, is consistent with the long-recognized principle that there can be no prospective waiver of an employee's rights under Title VII. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51, 94 S. Ct. 1011, 1021, 39 L. Ed. 2d 147 (1974). To find otherwise would defeat the remedial purposes of Title VII and the settlement agreement. It would also insulate the defendant from any further actions for improper conduct. Such an interpretation makes no sense under the circumstances which include (1) that the legal actions that precipitated the settlement agreement were premised on racial issues, (2) the settlement was clearly premised on representations that positive actions would be taken and that there would be an available dispute resolution mechanism in the event of a breach of the terms of the agreement, and (3) the agreements were negotiated and agreed to by counsel for the parties and the EEOC.

Even if this court were to conclude that the settlement agreement and the releases are unclear, the plaintiffs would not be entitled to relief premised on this argument. In determining

7

the scope of the releases, the court must apply contract principles. *Telecom Italia, SPA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001).  Under Alabama law, when a court is faced "[w]ith a choice between a valid construction and an invalid construction, the court has 'a duty to accept the construction that will uphold, rather than destroy, the contract.'" *Voyager Life Ins. Co. v. Whitson*, 703 So. 2d 944, 948 (Ala. 1997).  Similarly, the Eleventh Circuit Court of Appeals has stated, "'It is well understood that, where a contract is unclear on a point, an interpretation that makes the contract lawful is preferred to one that renders it unlawful.' *Cole* [*v. Burns Int'l Sec. Servs.*], 105 F.3d [1465] 1486 [(D.C Cir. 1997)]." *Paladino*, 134 F.3d at 1058.

Applying these principles to the present facts, the court finds that the scope of the releases only included past and then pending claims.  This is the only reasonable construction under the circumstances.  To find otherwise would be directly contrary to the foregoing authorities.

The plaintiffs' reliance on *Paladino* and *Wright* is misplaced.  In *Paladino*, the plaintiff brought Title VII and state law claims against her former employer.  The defendant moved to stay the action and to compel arbitration pursuant to a preemployment arbitration agreement the plaintiff signed.  Among other things, the plaintiff challenged language in the agreement that limited the arbitrator "to award damages for breach of contract only." *Paladino*, 134 F.3d at 1056.  The trial court refused to compel arbitration.  The defendant appealed.  The Eleventh Circuit affirmed the denial, stating:

> Federal statutory claims are generally arbitrable because arbitration, like litigation, can serve a remedial and deterrent function, and federal law favors arbitration. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28, 111 S. Ct. 1647, 1653, 114 L. Ed. 2d 26 (1991).  Title VII claims are no exception to this rule. *See Bender*, 971 F.2d at 700.  But the arbitrability of such claims rests on the

assumption that the arbitration clause permits relief equivalent to court remedies. *See Gilmer*, 500 U.S. at 28, 111 S. Ct. at 1653. When an arbitration clause has provisions that defeat the remedial purpose of the statute, therefore, the arbitration clause is not enforceable. *See Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1468 (D.C. Cir. 1997).

This clause defeats the statute's remedial purposes because it insulates Avnet from Title VII damages and equitable relief. *Cf. Brisentine v. Stone & Webster Eng'g Corp.*, 117 F.3d 519, 526-27 (11th Cir. 1997) (listing as one of the factors rendering a collective-bargaining arbitration clause unenforceable the arbitrator's lack of authority to resolve statutory claims). Arguably, *Paladino* could hope for a finding of liability from the arbitrator. In that event, she would still have to repair to a judicial forum to pursue any Title VII remedy. These difficulties considered, we treat this clause as an impermissible waiver of Title VII rights. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51-52, 94 S. Ct. 1011, 1021, 39 L. Ed. 2d 147 (1974); *Schwartz v. Florida Bd. of Regents*, 807 F.2d 901, 906 (11th Cir. 1987).

*Paladino,* 134 F.3d at 1062. Accordingly, the court concluded that because the clause deprived the employee of any hope of meaningful relief, while imposing high costs on the employee, it undermined the policies that support Title VII and therefore was unenforceable. *Id.*

In *Wright*, Circuit City implemented an alternate dispute resolution program designed to resolve employment-related disputes. The program included final and binding arbitration. The arbitration provisions expressly limited the employees' recovery to one year of back pay, 24 months of front pay, and punitive damages capped at the greater of a party's back pay/front pay award or $5,000. *Wright*, 82 F. Supp. 2d at 1286. Employees who did not wish to participate in the program were allowed to opt-out by completing and mailing of an "Arbitration Opt-Out Form" within 30 days of their receipt of the package explaining the program. *Wright,* 82 F. Supp. 2d at 1281. The *Wright* plaintiffs, who were two Circuit City employees, did not "opt-out" and later joined in a class action lawsuit against Circuit City. The company moved to compel arbitration of their claims. The plaintiffs contended, among other things, "that the limitations on

remedies contained in the arbitration agreement undermine[d] Section 1981's 'remedial and deterrent function[s].'" *Id.* at 1286.  Former Chief United States District Judge Sam C. Pointer, Jr., found that the agreement did not entitle the plaintiffs to the same potential recovery as Section 1981.  He also stated that "[b]ecause punitive damages and back/front pay are important deterrents to employers who might otherwise discriminate on the basis of race, the failure of the Circuit City arbitration provision to provide remedies equivalent to those allowed under Section 1981 prevents the [p]laintiffs from effectively vindicating their rights." *Id.*  Accordingly, he found the provision to be unenforceable.  The court, however, granted the motion to compel arbitration after modifying the agreement so as to make it consistent with federal law.[3]

The agreement and the releases in the present case do not contain the improper limitations that were problematic in *Paladino* and *Wright*.  The settlement agreement provides that all disputes under the Agreement are to be resolved by an arbitrator selected from an American Arbitration Association panel in Birmingham.  (Doc. 9, Ex. 1-A, pp. 9-10).  Pursuant to the American Arbitration Association's National Rules for the Resolution of Employment Disputes, the parties will be deemed to have made those rules a part of any arbitration agreement whenever they include arbitration by the American Arbitration Association as a part of their agreement. (Doc. 12, Ex. A, p. 6 (Rule 1)).  The same rules also state that "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable, including any remedy or relief that would have been available to the parties had the matter been heard in court." (*Id.* at 15 (Rule 34.d)).  Accordingly, the court finds that the plaintiffs' argument that the settlement agreement

---

[3] The arbitration agreement included a provision which permitted the court to modify the same to comply with any mandatory provision of applicable law. *Wright*, 82 F. Supp. 2d at 1287

and the releases are *void ab initio* is without merit.

As part of this argument, the plaintiffs also assert that support for their contention that they are without any remedies as a result of the releases is found in the defendant's motion which provides that the "[p]laintiffs' claims here are barred by the doctrines of accord, release and satisfaction." (Doc. 11, p. 3). The court disagrees. The plaintiffs' counsel is correct in his citation to the motion. However, that reference fails to consider the next paragraph which provides that "[t]o the extent that the [p]laintiffs['] claims relate to events after execution of the Settlement Agreement, they must be resolved through the dispute resolution procedure identified in Part IV.G [(Dispute Resolution Procedure)]of the Settlement Agreement because they are based on allegations that Chemical Lime has failed to adequately honor certain commitments under the Settlement Agreement." (Doc. 9, ¶ 3). Considering the "accord, release and satisfaction" language in context, the court finds that it does not support the contention that the plaintiffs are without remedies to rectify the purported actions of the defendant.

**B. Untimely Arguments**

The next matter is whether the court should consider the plaintiffs' arguments that were first advanced in the supplemental response. Specifically, the plaintiffs asserted therein for the first time that the arbitration provision which requires the parties to the agreement to share equally in the costs of arbitration makes the agreement unenforceable and that the costs associated with arbitration "would effectively preclude the plaintiffs from proceeding." (Doc. 13, ¶¶ 1 & 3). The defendant contends that the arguments should be precluded from review as untimely. (Doc. 15, p. 3).

There is no question that these arguments are untimely. The motion to stay this action

11

and to compel arbitration was filed on May 3, 2001. The court entered a briefing schedule on

May 7, 2001, requiring that any brief or response from the plaintiff be filed by May 22, 2001, and

any reply from the defendant be filed by June 5, 2001. (Doc. 10). The plaintiffs' responsive

brief was filed within one hour of entry of the scheduling order. The response did not raise the

fee-splitting and economic hardship issues. The defendant filed its reply on June 5, 2001. (Doc.

11). Included was a copy of the American Arbitration Association Rules. (*Id.*). The plaintiffs

raised the present arguments beyond the scheduling deadlines. They seek to justify their late

arguments by stating that the fee-splitting issue was a consequence of the Eleventh Circuit's

recent decision in *Perez*. The defendant counters that the fee-splitting and economic hardship

arguments are not a result of recent legal developments, but merely an application of *Paladino*

and *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 121 S. Ct. 513, 148 L. Ed. 2d 373

(2000).

The case was set for oral argument on July 2, 2001. (Doc. 14). At the hearing, the

plaintiffs' counsel again asserted that the fee-splitting argument was a consequence of the *Perez*

decision.

The issue is whether the arguments should be precluded premised on "the trial court's

inherent power to control the proceedings before it." *Jones v. Menard*, 559 F.2d 1282, 1285 n.5

(5th Cir. 1977). *See also Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998), *cert.*

*denied*, 525 U.S. 1054, 119 S. Ct. 617, 142 L. Ed. 2d 556 (1998) ("Having accepted defendant's

reply brief, this court has two permissible courses of action. It could either permit a surreply, or

it could refrain from relying on any new material contained in defendant's reply brief.").

12

### 1. Economic Hardship

The court will address the plaintiffs' late arguments in reverse order. The second

argument, that the costs associated with arbitration are prohibitive in view of each plaintiff's

financial situation, clearly could have been raised earlier. Such arguments are premised on the

*Paladino* and *Green Tree* decisions. The plaintiffs should have recognized the availability of

such an argument at the time they filed their response to the motion to stay and to compel

arbitration. Additionally, there is no explanation in the supplemental response as to why the

issue was not raised previously. Accordingly, this claim is barred from further review. To find

otherwise would encourage the parties to present their claims and defenses piecemeal.

### 2. Fee-Splitting

The first argument, that the settlement agreement incorporates an improper fee-shifting

provision, is not as easy a question. The parties disagree about the genesis of this argument. The

plaintiffs' state it is premised on the "nuances" in the *Perez* case. The defendant asserts that this

argument is well-established, particularly in the Eleventh Circuit. By way of example, the

defendant cites the court to *Green Tree*; *Schankle v. B-G Maintenance Management of Colorado,*

*Inc.*, 163 F.3d 1230, 1234 (10th Cir. 1999); *Paladino*; and *Cole,* 105 F.3d at 1484-85.

There is no question that the fee-splitting issue in *Perez* is a very discrete issue. In *Perez*,

the plaintiff claimed that the arbitration agreement was unenforceable because it required her to

waive substantive rights under Title VII since it prevented her from receiving fees and costs if

she prevailed. *Perez*, 253 F.3d at 1285. Specifically, she states that Title VII provides that a

prevailing party may be awarded reasonable attorneys' fees, including expert fees, and costs (*see*

42 U.S.C. § 2000e-5(k)); however, "the arbitration agreement states, 'despite any rule providing

that any one party must bear the cost of filing and/or the arbitrator's fees, all costs of the American Arbitration Association and all fees imposed by any arbitrator hearing the dispute, will be shared equally between you and the Company.'" *Perez*, 253 F.3d at 1285. The Eleventh Circuit found that "[t]his provision circumscribes the arbitrator's authority to grant effective relief by mandating equal sharing of fees and costs of arbitration despite the award of fees permitted a prevailing party by Title VII." *Id.*

The defendant, Globe, argued that "such an interpretation would render the Agreement unnecessarily self-contradictory." *Id.* at 1286. It stated that the agreement incorporated the AAA rules governing arbitration of employment disputes; one of which, Rule 34(e), "permits an arbitrator 'to assess fees, expenses, and compensation . . . in favor of any party.'" *Id.* The court rejected this argument, finding that "the AAA rules cited by Globe are not incorporated in the Agreement. The arbitration agreement states any disputes between Globe and the signatory employee shall be 'arbitrated . . . in accordance with the rules of the American Arbitration Association governing labor arbitration.' . . . The AAA rules governing labor arbitration are separate and distinct from the rules governing employment disputes." *Id.* The court then found that the AAA labor arbitration rules allowed the parties to vary the procedures set forth in the rules, thus making the change controlling and therefore unenforceable because it limited the arbitrator's ability to apportion the fees and costs if the plaintiff prevailed. *Id.*

Having closely reviewed the cases cited by the defendant, the court cannot conclude that the specific argument raised in *Perez* and by the plaintiffs herein was "well-established." The defendant's reference to *Green Tree, Schankle, Paladino,* and *Cole* is not dispositive. Each is distinguishable. None involved the specific question presented in *Perez*, concerning whether the

14

arbitration agreement vitiated the plaintiff's Title VII rights by requiring her to pay her costs and fees.[4]  Although a close issue, the court finds that the "nuances" are sufficient to allow the plaintiffs to proceed on this issue.  Accordingly, the plaintiffs will be afforded ten (10) days to file any reply brief in support of their supplemental response.

## III. CONCLUSION

Premised on the foregoing, the court finds that the plaintiffs' first contention that the arbitration provisions are *void ab initio* is insufficient to defeat the defendant's motion to compel arbitration and that the plaintiffs' argument of economic hardship is waived.  The court further finds that the plaintiffs should be afforded an opportunity to address the issues presented by the Eleventh Circuit's recent decision in *Perez*.  An appropriate order will be entered.

**DONE**, this __29th__ day of August, 2001.

_____

**JOHN E. OTT**
United States Magistrate Judge

---

[4]  *Green Tree* is distinguishable because the focus was on the absence of a provision on costs and fees in the agreement.  *Id.* at 121 S. Ct. at 521.  In *Paladino*, fees and costs were not the issue, a damages limitation for breach of contract recovery was.  *Id.*, 134 F.3d at 1057.  In *Schankle*, the issue was not the effect such a provision would have on available damages under Title VII, but whether a provision that requires such payment violates the FAA.  *Id.*, 163 F.3d at 1233.  *Cole* involved a contractual interpretation instead of a question of whether the provision was an improper limitation on Title VII damages.  *Id.*, 105 F.3d at 1483-86.